UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **513-499-5078** | Case No. **1:19MJ-020**<br><br>**Filed Under Seal** |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2019 JAN -9 PM 2:28
U.S. DISTRICT COURT
SOUTHERN DIST OHIO
CINCINNATI

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-499-5078** (the **SUBJECT TELEPHONE 2**), whose service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The **SUBJECT TELEPHONE 2** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major

in the Indiana Army National Guard and have done so for over seventeen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

4. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being

2

committed, and will be committed by Oscar TORBERT, David KEMP, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE 2** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE 2** will constitute evidence of those criminal violations, and will lead to the identification of other individuals engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including Drug Enforcement Administration, is conducting a criminal investigation of Oscar TORBERT, David KEMP, and other as-yet known and unknown individuals regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.

9. In July 2018, a DEA confidential source (CS #1)[1] told me that KEMP is using an apartment near 1751 Bleecker Lane, Cincinnati, Ohio as KEMP's stash location.

10. On July 25, 2018, United States Magistrate Judge Stephanie Bowman signed a geo-location order for phone: 513-394-0917, a telephone number previously used by Oscar TORBERT. On July 26, 2018, I began receiving geo-location information for phone: 513-394-0917.

---

[1] The CS has been charged with a felony drug-trafficking violation and is cooperating for consideration in sentencing. The CS has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers this CS reliable.

3

11. On August 8, 2018, at approximately 2:00 p.m., Cincinnati Police officers arrested TORBERT and Tayvon TOLLIVER for drug trafficking. Officers located approximately 1.07 grams of fentanyl[2] on TORBERT and approximately 448.6 grams of marijuana[2] in TOLLIVER's vehicle. TORBERT admitted to possessing both the fentanyl and the marijuana. Officers also seized nine mobile telephones possessed by TORBERT and TOLLIVER. TORBERT and TOLLIVER were transported to the Cincinnati Police Department District 4 Headquarters to be processed. According to geo-location information for telephone number 513-394-0917, at approximately 2:09 p.m., telephone number 513-394-0917 was within approximately 1,281 meters of Inwood Park, near the location where TORBERT and Tolliver were arrested. At approximately 5:54 p.m., telephone number 513-394-0917 was within approximately 3,339 meters of Deer Creek Common, located in the area of 1617 Reading Road, Cincinnati, Ohio; and District 4 Headquarters, located at 4150 Reading Road, is also within 3,339 meters of Deer Creek Common. According to geo-location information, telephone number 513-394-0917 remained in the same location until approximately 11:09 p.m. when telephone number 513-394-0917 could no longer be located. Consequently, I believe that TORBERT possessed telephone 513-394-0917 at the time of his arrest.

12. On or around August 17, 2018, 513-394-0917 was replaced by 513-629-0062 (**SUBJECT TELEPHONE 1**), using the same subscriber information (Alexis Durham at P.O. Box 112080, Cincinnati, Ohio). Between August 23, 2018 and August 25, 2018, I attempted to obtain geo-location information for **SUBJECT TELEPHONE 1** pursuant to the search warrant for 513-394-0917, however T-Mobile US, Inc., was unable to locate **SUBJECT TELEPHONE 1**.

---

[2] Weight and substance obtained from a report prepared by the Hamilton County Coroner's Laboratory.

13. In September 2018, CS #1 informed me that TORBERT told CS# 1 that TORBERT was providing KEMP with heroin/fentanyl.

14. On October 24, 2018, at approximately 4:55 p.m., I observed TORBERT and an unidentified male standing on Bleecker Lane in the area of what was reported as KEMP's stash location. Consequently, I believe that TORBERT was meeting with KEMP in furtherance of their heroin/fentanyl trafficking conspiracy.

15. On October 2, 2018, CS# 1 told me that TORBERT was still using **SUBECT TELEPHONE 1**.

16. In December, 2018, I met with a Cincinnati Police Department confidential source (CS# 2[3]) who told me that CS# 2 could purchase ounce quantities of fentanyl from KEMP for approximately $2,600 per ounce. CS# 2 said that during December 2018, KEMP provided CS# 2 with approximately a gram of suspected fentanyl[4] as a "tester." CS# 2 said that KEMP told CS# 2 that it was fentanyl. KEMP also told CS# 2 that KEMP currently had kilogram quantities of fentanyl. CS# 2 described the fentanyl as white with a yellow tint. CS# 2 stated that KEMP currently uses multiple telephone numbers, to include **513-499-5078 (SUBJECT TELEPHONE 2)**.

17. On January 7, 2019, I reviewed call records for **SUBJECT TELEPHONE 2**. According to call records, **SUBJECT TELEPHONE 2** communicated with **SUBJECT**

---

[3] CS# 2 was charged with a felony drug-trafficking violation and is cooperating for consideration in the disposition of the charges. The CS has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers this CS reliable.

[4] CS# 2 was not expecting KEMP to give CS# 2 fentanyl during their encounter. Unsure of what to do with the fentanyl, CS# 2 discarded the fentanyl. As a result, investigators were not able to submit the suspected fentanyl for analysis.

5

**TELEPHONE 1** approximately 198 times between November 29, 2018 and December 29, 2018. During this time frame, **SUBJECT TELEPHONE 1** was **SUBJECT TELEPHONE 2's** fifth most frequent contact. Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that TORBERT admitted to possession of fentanyl following his arrest on August 8, 2018, CS# 1's statement that TORBERT told CS# 1 that TORBERT was distributing heroin/fentanyl to KEMP, CS# 1's statement that KEMP has a stash location in the area of 1751 Bleecker Lane, my observation of TORBERT in the area of 1751 Bleecker Lane on October 24, 2018, CS# 2's statement that KEMP provided CS# 2 with approximately a gram of suspected fentanyl, and my knowledge that **SUBJECT TELEPHONE 1** is the fifth-most-frequent contact of **SUBJECT TELEPONE 2**, I believe that TORBERT and KEMP are using **SUBJECT TELEPHONES 1** and **2** in furtherance of a heroin/fentanyl trafficking conspiracy.

18. In my training and experience, I have learned that T-Mobile US, Inc. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone

6

connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19. Based on my training and experience, I know that T-Mobile US, Inc. can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that T-Mobile US, Inc. can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc.. I also request that the Court direct T-Mobile US, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 9th day of January 2019.

_____
Hon. Stephanie K. Bowman
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(513) 499-5078** (the "Target Cell Phone"), whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile US, Inc. including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc., T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 United States Code, Sections 841 and 846 involving Oscar TORBERT, David KEMP, and other as-yet known and unknown individuals.

2